UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 11-CR-0324 (PJS/LIB) |
| Plaintiff, | |
| v. | ORDER ADOPTING REPORT AND RECOMMENDATION |
| JOHN JOSEPH DOUGLAS, | |
| Defendant. | |

Andrew Dunne, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Frederick J. Goetz, GOETZ & ECKLAND P.A., for defendant.

Defendant John Joseph Douglas is charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). This matter is before the Court on Douglas's objection to Magistrate Judge Leo I. Brisbois's December 12, 2011 Report and Recommendation ("R&R"). Judge Brisbois recommends denying Douglas's motion to suppress a firearm seized by police officers on May 31, 2011. *See* Docket No. 33. Judge Brisbois found that, notwithstanding the government's initial concession to the contrary, Douglas did not have a reasonable expectation of privacy in the place where the firearm was found, namely, "a plastic bag left in a rusted-out refrigerator abandoned in an open field with no habitable structure anywhere near it." R&R at 10.

The Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). Although the question is close, the Court agrees with Judge Brisbois that Douglas did not have a reasonable expectation of privacy in the plastic bag. The Court also concludes that, even if Douglas did have such an expectation, exigent circumstances justified the officers'

warrantless search for, and seizure of, the firearm. Accordingly, the Court adopts Judge Brisbois's recommendation that Douglas's motion to suppress be denied.

The material facts are fully and accurately set forth in the R&R and will not be repeated here.

## I. REASONABLE EXPECTATION OF PRIVACY

A search does not violate the Fourth Amendment rights of a person unless that person has an expectation of privacy in the area searched and that person's expectation is reasonable. Thus, this Court must first determine whether Douglas, by his words or actions, exhibited a subjective expectation of privacy in the plastic bag that was searched — that is, "whether he has shown that he sought to preserve something as private." *Bond v. United States*, 529 U.S. 334, 338 (2000) (internal quotation marks and brackets omitted). If the Court finds that Douglas had a subjective expectation of privacy in the plastic bag, then the Court must determine whether Douglas's expectation was objectively reasonable — that is, "whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." *Id.* (internal quotation marks omitted); *see also United States v. Kiser*, 948 F.2d 418, 423 (8th Cir. 1991) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). "The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched." *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994).

Judge Brisbois concluded that Douglas did not have a subjective expectation of privacy in the plastic bag, which was left in the remnants of a rusted-out refrigerator that had been abandoned in an open field. R&R at 9. Judge Brisbois further concluded that, even if Douglas

had a subjective expectation of privacy in the bag, that expectation was not objectively reasonable.  R&R at 10.

Douglas argues that Judge Brisbois's conclusion is based on an impermissibly broad interpretation of the open-fields doctrine, which holds that individuals do not have a reasonable expectation of privacy in an open field.  *See Oliver v. United States*, 466 U.S. 170, 177-78 (1984).  Douglas concedes that, under the open-fields doctrine, the officers did not need a warrant to enter and walk around the property.  But, Douglas says, the officers were not authorized under the open-fields doctrine to search the plastic bag that they spotted in the rusted-out refrigerator.  Rather, Douglas insists, the officers needed to get a warrant.

Douglas is correct that the open-fields doctrine does not authorize the search of each and every structure or item found in an open field.  But Judge Brisbois made no such assertion in his R&R.  Rather, Judge Brisbois recognized that an individual may have a reasonable expectation of privacy in some types of structures or items located in an open field, but not in others.[1]  It is therefore true, as Douglas argues, that the open-fields doctrine, in and of itself, did not authorize the warrantless search of the plastic bag.  But it is also true that the fact that the bag was visible to anyone standing near the refrigerator in the open field — and the fact that Douglas had no

---

[1]*Compare United States v. Dunn*, 480 U.S. 294, 304-05 (1987) (reasonable to expect privacy in a barn), *and Allinder v. Ohio*, 808 F.2d 1180, 1186 (6th Cir. 1987) (beekeeper has reasonable expectation of privacy in apiaries), *and United States v. Longie*, 370 F. Supp. 2d 941, 945 (D.N.D. 2005) (reasonable to expect privacy in a shed) *with United States v. Stallings*, 28 F.3d 58, 61 (8th Cir. 1994) (no expectation of privacy in tote bag), *and United States v. Pennington*, 287 F.3d 739, 745 (8th Cir. 2002) (no expectation of privacy in underground bunker where entryway was visible and access was unrestricted), *and United States v. Ramapuram*, 632 F.2d 1149, 1156 (4th Cir. 1980) (no expectation of privacy in "junker" car).

expectation of privacy (reasonable or otherwise) in the open field — is *relevant* to whether Douglas had a reasonable expectation of privacy in the bag.

As Judge Brisbois recognized, the most closely analogous precedent in the Eighth Circuit is *United States v. Stallings*, 28 F.3d 58 (8th Cir. 1994). In *Stallings*, the Eighth Circuit found that the defendant (Stallings) did not have a subjective expectation of privacy in a tote bag that he had left in the underbrush of a field belonging to his neighbor. *Stallings*, 28 F.3d at 59-61. The Eighth Circuit emphasized that the tote bag "bore no indicia of ownership indicating it belonged to Stallings," *id.* at 61 n.4, and, moreover, that Stallings had "put on no evidence of his possession or control of the bag, his historical use of the tote bag, or his ability or attempts to regulate access to it." *Id.* at 60-61. The Eighth Circuit further observed that, even if Stallings had a subjective expectation of privacy, it would not have been a reasonable expectation because Stallings, by leaving the bag in an open field unattended, had no means of restricting access to the bag. *Id.* at 61 ("[A]ny expectation of privacy Stallings had is not objectively reasonable . . . because 'animals, children, scavengers, snoops, and other members of the public' had access to the tote bag.") (quoting *California v. Greenwood*, 486 U.S. 35, 40 (1988)).

Douglas contends that *Stallings* is distinguishable because he had permission from his aunt and uncle (the owners of the property) to be in the open field in which the plastic bag was placed, while Stallings had no connection to the open field in which the tote bag was placed. But the fact that Douglas was "legitimately on the property" (*if* he was legitimately on the property[2]) does not necessarily mean that he had an expectation of privacy in the property, or in the plastic

---

[2] It is clear that Douglas had received permission from his aunt and uncle to check up on the property. It is not clear that Douglas's aunt and uncle gave him permission to enter the property to drink alcohol and discharge firearms.

-4-

bag placed on the property.  *See Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978).  After all, a defendant can legitimately stand in the middle of Central Park, but that does not mean he has an expectation of privacy in a plastic bag that he leaves in the middle of the park.  In *Stallings*, the Eighth Circuit said nothing about whether Stallings did or did not have permission to walk on his neighbor's land, indicating that the issue was immaterial.

Douglas also contends that *Stallings* is distinguishable because the tote bag in that case had been left unattended in a field, while, in this case, the plastic bag had been placed in a rusted-out refrigerator, Douglas remained in close proximity to the bag, and Douglas demanded (without apparent authority[3]) that the officers leave the property.  The Court acknowledges that, because of these facts, Douglas's argument that he had a subjective expectation of privacy in the plastic bag is stronger than the argument of Stallings that he had a subjective expectation of privacy in the tote bag.  But the Court concludes that Douglas has nevertheless failed to establish that he had a subjective expectation of privacy in the plastic bag.

First, the fact that the plastic bag was placed in the refrigerator is of little moment.  The refrigerator had no back or front and was rusted through, leaving the plastic bag visible to someone walking near the refrigerator, just as the tote bag in *Stallings* was visible despite being hidden in "thick underbrush."  *Stallings*, 28 F.3d at 59.  Second, the fact that Douglas demanded that the officers leave the *property* does not, as Douglas claims, establish that he sought to keep the contents of the *plastic bag* private.  The property was a large piece of land.  There is no

---

[3]The record contains little evidence that Douglas had the authority to decide who could and could not enter the property of his aunt and uncle.  To the contrary, the record reflects that Douglas called his aunt and asked her to tell the officers to leave the property, which suggests that Douglas did not have authority to restrict access to the property.

evidence that Douglas ever indicated — by word or action — that he owned the plastic bag. Third, like the tote bag in *Stallings*, the plastic bag in this case did not itself bear any indication that it belonged to anyone, much less that it belonged to Douglas.  Indeed, plastic bags, unlike tote bags, typically contain trash.  And finally, aside from evidence that he asked the officers to leave the property, Douglas "put on no evidence of his possession or control of the bag, his historical use of the . . . bag, or his ability or attempts to regulate access to it."  *Stallings*, 28 F.3d at 60-61.  For these reasons, the Court finds that, while the question is close, Douglas has failed to establish that he had a subjective expectation of privacy in the plastic bag.

     Even if the Court is mistaken — and even if Douglas did have a subjective expectation of privacy in the plastic bag — the Court agrees with Judge Brisbois that this expectation was not objectively reasonable.  After all, the gun was placed in a plastic bag (as noted, the type of bag typically used to carry trash), and the plastic bag was placed in a rusted-out, abandoned refrigerator, where the plastic bag was visible to anyone who approached the refrigerator in the open field.  Except for his demand that the officers get off his aunt and uncle's property, Douglas did nothing to protect the privacy of the contents of the plastic bag.  His expectation of privacy in the plastic bag and its contents — if it existed — was based on little more than his hope that the plastic bag would not be found.  But, as the Supreme Court held in *Oliver v. United States*, the fact that a person attempts to conceal something from the public eye does not establish a reasonable expectation of privacy in the constitutional sense.[4]  466 U.S. 170, 182-83 (1984).

---

[4] The Court also finds persuasive the Fourth Circuit's decision in *United States v. Ramapuram*, 632 F.2d 1149 (4th Cir. 1980).  In that case, the defendant hid stolen dynamite in the unlocked trunk of a "junker" car that was located in a field that was owned by the defendant's father but leased to others.  *Id.* at 1151-52.  The Fourth Circuit assumed that the
(continued...)

After all, had Douglas hidden a plastic bag under a bench in Central Park, stood some distance away, and then, when law-enforcement officers arrived, did nothing to protect the privacy of the bag except demand that the officers leave the park, it is highly unlikely that any court would find that Douglas had a reasonable expectation of privacy in the bag.

In sum, the Court concludes that Douglas did not have a subjective expectation of privacy in the plastic bag and that, even if he did, his expectation was not one that "society is prepared to recognize as reasonable." *Bond*, 529 U.S. at 338.[5]

## II.  EXIGENT CIRCUMSTANCES

Even if Douglas had a reasonable expectation of privacy in the plastic bag, the Court would nevertheless deny his suppression motion because the officers' search for, and seizure of, the firearm fell within the exigent-circumstances exception to the warrant requirement.

The Supreme Court has long recognized that a warrantless search may be justified by exigent circumstances. *See Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978) ("Warrants are

---

[4](...continued) defendant had a subjective expectation of privacy in the contents of the trunk, but held that the defendant's expectation was not reasonable. The Fourth Circuit emphasized that the "junker" was located in an open field and that the trunk had no lock, which meant that the defendant could not have reasonably expected the contents of the trunk to "remain secure from prying eyes." *Id.* at 1156. True, in this case Douglas remained on the property, while in *Ramapuram* the defendant did not, but, for the reasons described above, that fact does not persuade this Court to reach a different conclusion than the *Ramapuram* court.

[5]As noted, the government decided not to contest the existence of a reasonable expectation of privacy in the plastic bag before Judge Brisbois. But the government made this decision only after the suppression hearing. Thus, at the suppression hearing, Douglas had every incentive to introduce evidence that he had such an expectation. And, after receiving Judge Brisbois's R&R, Douglas had the right (which he did not exercise) to ask this Court to allow him to reopen the record to introduce additional evidence. Clearly, then, Douglas was not prejudiced by the fact that Judge Brisbois rested his decision on a basis that had not been argued by the government.

generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."). "Exigent circumstances exist . . . when law enforcement officials have a legitimate concern for the safety of themselves or others." *United States v. Vance*, 53 F.3d 220, 222 (8th Cir. 1995) (internal quotations omitted); *see also United States v. Williams*, 633 F.2d 742, 744 (8th Cir. 1980) ("When there is a reasonable fear of harm, a warrantless entry may be justified."). A search is permissible under the exigent-circumstances exception "as long as the circumstances, viewed *objectively*, justify the action." *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) (emphasis in original) (internal quotations omitted). The government bears the burden of establishing that an exception to the warrant requirement applies. *See United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005).

In this case, exigent circumstances justified the officers' actions. Shortly after midnight, two separate callers reported hearing gunshots coming from an uninhabited rural lot located near Aurora, Minnesota. While interviewing one of the callers, Deputy Kim Hanegmon of the Saint Louis County Sheriff's Department heard more gunshots coming from the property. Both Hanegmon and Officer Kevin Greene of the Hoyt Lakes Police Department testified that it was unusual to hear gunshots in that area at that time of night.

When the officers arrived at the property, they found several individuals, including Douglas, gathered near a campfire. It appeared that at least some of the individuals had been drinking. All of the individuals denied that there was a gun on the property or that anyone had fired shots from the property. The officers quickly discovered that they were being lied to — and that the individuals present were hiding something — as Greene discovered several recently

fired shotgun-shell casings near the campfire.  A short while later, two girls who were present — girls who had initially denied seeing a gun — admitted to Hanegmon that there was a gun somewhere on the property and that Douglas had been shooting the gun.  The girls described what the officers believed to be a sawed-off shotgun measuring between 12 and 18 inches in length.

    The night was dark, and the property was surrounded by dense woods.  Douglas and the other individuals were detained in squad cars, but Hanegmon and Greene testified that, even with their spotlights, they could not see very far into the woods, and therefore they could not know whether other individuals — sober or impaired — were hiding on the property.  In light of these facts, the Court concludes that the officers acted reasonably in searching for the gun in order to protect their safety and the safety of others.  *See, e.g.*, *United States v. Henderson*, 553 F.3d 1163, 1165 (8th Cir. 2009) (officers' search for a gun in the defendant's bedroom was justified even though the defendant was already handcuffed); *United States v. Valencia*, 499 F.3d 813, 816 (8th Cir. 2007) (exigent circumstances justified a warrantless entry into an apartment to secure a recently fired shotgun); *United States v. Janis*, 387 F.3d 682, 687-88 (8th Cir. 2004) (it was reasonable for officers to enter a house to secure a handgun).

    Douglas, of course, disagrees.  He argues that an unaccounted-for firearm does not in itself give rise to exigent circumstances or make the officers' search objectively reasonable.  In support of his argument, Douglas relies on the Ninth Circuit's decision in *United States v. Gooch*, 6 F.3d 673 (9th Cir. 1993).  In that case, police officers were summoned to a state campground after receiving reports that the defendant had discharged a firearm during a fight.  *Id.* at 676.  The incident had occurred between midnight and 2:00 a.m.  The officers, however,

did not arrive at the campsite until daybreak, or approximately 5:00 a.m. After determining that the defendant was asleep inside a closed tent, the officers ordered him out and arrested him without a warrant. Approximately 15 minutes later, the officers, again without a warrant, searched the defendant's tent and recovered a loaded handgun under his air mattress. *Id.* The Ninth Circuit affirmed the district court's suppression of the handgun, emphasizing that there was no ongoing threat of harm and that it would have been easy for the officers to restrict access to the tent until a warrant was obtained. *Id.* at 680.

Douglas's reliance on *Gooch* is misplaced. In *Gooch*, the officers arrived hours after shots were fired; here, officers arrived minutes after hearing shots. In *Gooch*, officers arrived at daybreak, and the surrounding area was visible. Here, officers arrived at night, and the surrounding area was not visible. In *Gooch*, the person suspected of shooting the gun was sleeping in a tent; here, the person suspected of shooting the gun was lying, hostile, and appeared to have been drinking. In *Gooch*, the officers had reason to believe that the gun was in a tent, to which access could easily have been restricted; here, the officers had reason to believe that the gun was somewhere in an open field surrounded by dense woods — an area to which access could not easily have been restricted. In *Gooch*, the gun was found under the mattress on which the suspect had been sleeping; here, the gun was found in a plastic bag placed in an abandoned, rusted-out refrigerator. In short, the circumstances faced by the officers in this case differed markedly from the circumstances faced by the officers in *Gooch*.

Finally, Douglas points out that the Eighth Circuit's leading exigent-circumstances cases involving the discharge of firearms — in particular, *Valencia* and *Janis* — are distinguishable because they involved shootings in urban settings and searches inside of dwellings. The Court

disagrees. It is true that, because the shootings in those cases occurred in densely populated areas, there may have been more of an urgency to find the firearm. At the same time, though, the searches in those cases — searches of private homes — were more intrusive, and thus required more justification. The search conducted in this case was limited to the area around a campfire in an open field — including abandoned junk found in that area — and was objectively reasonable in light of the exigencies that the officers faced. *See United States v. Walsh*, 299 F.3d 729, 734 (8th Cir. 2002) (finding that the officers' limited search was reasonable and commensurate in scope to the exigencies of the situation). Likewise, Greene's manipulation of the plastic bag with his thumb and forefinger — and Hanegmon's opening of the bag after Greene concluded that it likely contained a gun — were also lawful extensions of the initial search. Accordingly, Douglas's motion to suppress is denied.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant John Joseph Douglas's objection [Docket No. 37] is OVERRULED.

2. The Court ADOPTS the R&R [Docket No. 33].

3. Douglas's motion to suppress evidence [Docket No. 14] is DENIED.

Dated: January 11, 2012                     s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge